Good morning, Your Honors. Philip Johnson for Appellant John Wayne Ferguson. Generally speaking, this is a case about creating an unfair advantage. More specifically, it's about allowing an expert witness to express opinions without allowing the other side to cross-examine the expert on those opinions. Now, this is a proceeding brought up from the National Transportation Safety Board, and the central issue in this case was whether or not John Wayne Ferguson flew three flights on June 26, 2005 that were flown for compensation or higher. On direct examination by FAA attorney Richard Conte, their expert, expressed the opinion that it was for compensation or higher. On cross-examination, when counsel for Mr. Ferguson attempted to examine Mr. Conte about what constituted for compensation or higher, he was prevented from doing so, although that opinion had been expressed on direct examination. Now, what the FAA is doing is hiding behind what's known as the deliberative process. In any other lawsuit where expert witnesses testify, the full extent of that expert witness' work, inquiries, whatever that expert witness does is subject to examination and cross-examination. Here, the FAA brought in the investigating officer, had him testify that the flights were for compensation or higher, and then by objecting on the grounds that the deliberative process prevented counsel from inquiring into the bases for those opinions. Now, Mr. Conte testified that conversations, bills for the flight, maintenance logs, pictures taken on the day of the flight, and testimony from witnesses led him to conclude that the flights were for compensation or higher. When counsel for Mr. Lackey began to inquire into each one of those, the administrative law judge cut him off, saying he was not going to allow counsel to pull apart that testimony. Well, that's the very basis of cross-examination of an expert witness. In my opening brief, I analogize this situation to a three-legged stool. Well, you know that the federal rules of evidence are, well, they're instructive. They're not binding in proceedings such as this. That's quite correct. But when the procedures that are undertaken in the administrative proceeding are such that they result in arbitrary and capricious rulings and an abusive process, I think they must be watched very carefully. I understand this Court must give some deference, but if the underlying case involves capriciousness, an arbitrary ruling, an absolute abusive process, I think that deference should be placed elsewhere. Well, we're dealing here, when we're talking about compensation for higher, we're dealing with a legal conclusion, and that's an area that rests with the ALJ, is it not? Of course, Federal Rule of Evidence 704 states that testimony in the form of an opinion that is otherwise admissible is not objectionable because it is on the ultimate issue to be decided. Yeah, but that's true, but that's a matter of discretion. And that's for the presiding judge or hearing officer. You can allow it, you can disallow it. And that's apparently what happened here. The ALJ let counsel know that this was a question of law that was for the ALJ and the National Transportation Safety Board. And that takes us back to where I was earlier, Your Honor. If an expert testifies that something is for compensation or for higher, you are handicapping, you are abusing the rights of the other side when they are not allowed to inquire into what was utilized in arriving at that opinion, what examination was undertaken, what thought processes were undertaken, what the expert went through in order to arrive at that opinion. Once a party opens the door to a subject, the opposing party must be given an opportunity to step through the same door. To do otherwise simply tramples on the rights of the opposing party. That is what happened here. Now, this case, although separated from, is very much attached to the four Lackey cases that the court will be hearing next on calendar. Mr. Ferguson, unfortunately, was caught between Alan Wayne Lackey, who owns and operates Wine Country Helicopter, and Virginia Bamford, a disgruntled investor for Wine Country Helicopters. And as the court will hear in the later argument, her feelings about Mr. Lackey and his company resulted in several investigations by the FAA at her prompting. And unfortunately, because of that, Mr. Ferguson, who is a well-respected pilot with several ratings, including an ATP, was caught in the middle when he asked Mr. Lackey, if these flights were for compensation or hire, Mr. Lackey told him that they were not, that they were Part 91 flights. And your client wasn't actually compensated. That's correct. He was not. The LJ said that is irrelevant. That's correct. That's exactly what he said. Because the flight, in both the board's opinion and the LJ's opinion, was a flight so defined. It was also testified to by Mr. Lackey that his company was not compensated for those flights that were flown by Mr. Ferguson. Right, but they didn't believe Mr. Lackey, right? There was a finding that that was not as credible as other circumstances. I believe that the ALJ did not believe anything that Mr. Lackey said. So Mr. Ferguson, was he an employee of Wine Country Helicopters? No, he was not. Okay. So in what capacity was he? He had been a prior investor in Wine Country Helicopters, a prior investor, but he was a friend of Mr. Lackey's, to whom Mr. Lackey went when he needed another pilot. And he specifically told Mr. Ferguson that these would be Part 91 flights and not Part 135 flights. And he got, Mr. Ferguson got an 85-day suspension? Let me check my records. Something like that. Yes, the recommended suspension was 90. It was reduced to 85. So has he served that? Does he have his license back? No, it's pending. So he hasn't, he's been able to fly all this time. Yes, although he doesn't do that as a business legalist. So he's splitting his time between California and Florida. He's invested in several different things, and he does flying as a hobby more than anything else, I believe. Okay. I see that I have just one minute and 30 seconds. If I could reserve that time. All right. Sure. Thank you. Good morning, Your Honors. I'm Susan Cannon, and I represent the FAA in this matter. One of the things the Court already alluded to is the fact that this action arises under the Administrative Procedure Act. Even the Administrative Procedure Act must contemplate a fair hearing. Absolutely, Your Honor. Unfortunately, I didn't bring the transcript. I don't know what happened to it. But tell me if I'm wrong. As I recall what happened in this proceeding, the expert got up and testified to why he thought this was for compensation or for hire. And then they asked him to give his opinion. And the word was, what is your opinion? And he gave his opinion, and the administrative law judge said that he wanted to hear his opinion because that was important for him to rely on. And then when there was cross-examination, counsel tried to ask what the basis of his opinion was and what for hire or for compensation, what that meant when he was giving his opinion that it was for hire. Asked him what that term meant. And then the administrative law judge said, well, the question of an opinion is a legal conclusion, so you can't ask about it. Although he had said earlier that that was something that he wanted to rely on, the opinion. Is that an inaccurate description of what happened? Well, I don't want to say anything that you say is inaccurate. No, no, I might. As I said, I don't have the transcript with me. That's not quite what happened. What happened was the inspector got up and talked about the evidence that he discovered during the investigation. Then the FAA's attorney asked for the opinion as to whether he believed the flight was conducted under 135 for compensation and hire. And then right after that, the FAA's attorney said, and on what do you base that opinion? And the inspector said that he based that opinion on a number of factors, including the evidence that he had gathered, which included photographs and witness statements and things like that, on the conversations that he had had with Mr. Lackey, on basically all of the evidence that he had garnered. Then the Mr. Ferguson's counsel got up to do cross-examination. They had stopped there for a while. Yes. But he then was asked whether this was his opinion. Yes, and what the basis was. As to that same legal question, that what the ALJ later said is a legal question, he testified that his conclusion was that, in his opinion, there was a violation. Yes. Okay. Then what happened was Mr. Ferguson's counsel started cross-examination. And at that point, Mr. Ferguson's counsel asked him again, what is the basis for your opinion? And he also asked about, you know, you said that it was for hire and for compensation, whatever that is. Yes. What do those terms mean? In other words, when you're giving your legal opinion, how do you understand the phrase? And the ALJ then said, well, that's his opinion is the ultimate conclusion, so I'm not going to let you ask him about it because that's for me to decide. Well, I think you're jumping too far back. There were a lot of things that happened before we got to that point. Mr. Ferguson's. Oh, yeah. Earlier he wanted to ask him about all those factors and if you disassembled them or disaggregated them. Yes. First, Mr. Ferguson's counsel asked him for the basis again. He reiterated the basis. Then he, in particular, he mentioned the photos. The next line of questions that came up were about the photos. Yeah. And Mr. Ferguson's counsel listed at that point, well, if you only had the photos, was that enough to support. That's another objection that I'm not asking you about. Okay. I'm asking you about what possibly is for the ALJ to be so interested in the opinion of the expert and to say it was important what that opinion was. And then when it was cross-examined about now your opinion is that he did these, you know, did not comply with these terms, fair, compensation, all that. When he's asked, well, what do those terms mean to you, that the ALJ said, well, the opinion is up to me. That's a legal question. So you can't ask him about his opinion, which he had just said was he would be allowed to give. But if you look closely at what the law judge actually said, basically he said he didn't care about the opinion because once the opinion was given, it was up to him to evaluate the weight of it and to ultimately determine just as what the APA says is whether the facts and evidence supported his determination, the law judge's determination of what constitutes. The first time when he was asked for his opinion by the FAA or by counsel for the government, when he was asked to give an opinion, why didn't the ALJ then say to the government, his opinion doesn't matter, it's irrelevant. Well, I mean, he very well could have said that at that point, but that doesn't create error because what you ultimately have to look at is how the judge decided the case. Well, that's a different question. That's prejudice. I mean, I just found that conduct rather odd. It may not require reversal, but I think it's odd to let the government ask for an opinion and then when somebody wants to say, well, your opinion that it's for compensation, what does the compensation mean in this context to you? I don't think there was any ambiguity over the meaning of what compensation meant. Well, we don't know what compensation meant to the witness who testified because Mr. Johnson wasn't allowed to ask about that. I mean, compensation may mean you fly and hope to get somebody's friendship out of it who may do you favors. That could be compensation. But that's what Mr. Johnson was asking, a man who testified about I thought he got compensation. He was saying, well, what does compensation mean to you? And he wasn't allowed to ask that. But only because the judge, in accordance with the APA, found that issue to be irrelevant because compensation and hire is so well defined in the law. And even as you suggest that compensation might be that they want the person to be their friend. So why did they ask the question anyway? You know, you mean why did the FAA's attorney ask the question? Yeah. I don't think the question was necessary at all. I mean, the fact is, you know, we have a transcript. It reflects that that question was answered. It reflects that then on cross-examination, it's true the door was opened and that perhaps he should have been allowed to inquire further as to it, but it doesn't constitute any reversible error here because there was nothing to be gleaned from that testimony. There is a well-defined definition of compensation and hire, and there's no dispute really what that means. The case law — What is that well-defined definition? It's defined in the Board's case law and also in the definitions. And, in fact, I believe Mr. Ferguson's counsel even provided a definition from, I think it's Section 135.1 with regard to what it means. I'm asking you, so there's — Well, okay. Yeah. I'll go through it briefly. In the case, the Murray case that the Board decided, in that case, the issue was whether the fact that financial money didn't change hands between the party, whether it could still be compensation and hire. And in that case, what the Board did was look at the objective facts and whether there was a relationship that established that the party who was operating the flight received some benefit, either direct or indirect. And in this case, there's no dispute that Mr. Lackey was conducting these flights for Henry Aviation. There's documentary evidence that supports that he was compensated for it, although if you just accept Mr. Lackey's version of the events, he says that the records are erroneous and that he really wasn't billing Henry Aviation for the compensation that's reflected on the documents. But even if you put that all aside, under the definitions of compensation and hire that are evident in the Murray case, the Croy case, and the Thornburg case, compensation can take the form of future business that might be gleaned from the activity. And in this context, it's abundantly clear here that Mr. Lackey did this particular NASCAR event for the three years prior to this, that he testified that he did it for, it was a big revenue-generating event for him, that the passengers who were actually on board the flights that Mr. Ferguson operated, they were all strangers to him. There's no evidence that he knew them. There's no evidence that it would fall under any of the exceptions to compensation and hire, that there was a common purpose to the flights. An example of that type of exception would be if Mr. Ferguson, for example, was going to attend the NASCAR event and he was going to, he had some friends who wanted to come along and they said they'd pay their share. That would be an example of one of the exceptions that you could have to Part 135. But this circumstance is nothing like that at all. This is somebody who was picking up passengers at an agreed location and transporting them to the NASCAR event, as Mr. Lackey had done the years prior. With regard to the knowledge that Mr. Ferguson had, he inquired no further than what Mr. Lackey said. And under the CROI case, the board has said that, you know, a pilot who is engaging in that type of operation has an obligation to inquire further. They need to find out why the passengers are on the flight. And none of that happened, and that's all undisputed in this record. If you have no further questions for me, then we will submit at this point. The knowledge of Mr. Ferguson was the last thing discussed. Mr. Ferguson testified that he asked Mr. Lackey on two or three occasions if it was Part 91 or Part 145, and each time he was told it was Part 91. Where else would he go to inquire? Certainly the Flight Standards District Office wouldn't have any idea. No one higher than that would have any idea either. The only person who would really know would be Mr. Lackey. The ALJ did comment that he thought Mr. Ferguson had been somewhat taken advantage of by Mr. Lackey. Despite that, despite that. And that he did inquire, and yet what the ALJ did was still impose the suspension but reduced it. Five days. So is it a strict liability type of statute? Once you find it was compensation for hire and you weren't authorized to do that, then you're liable whether you knew or should have known? That, I think, is up to the discretion of the ALJ, unfortunately. And in this particular case, he chose to punish Mr. Ferguson for doing something that he had no idea was against the FAA regulations. He thought it was Part 91. He didn't believe it was Part 135. Did Ferguson have anything on his record? Absolutely clean up to that point. Absolutely clean. Guy has an ATP. He's flown charter jets around the world. He's flown helicopters. He's a very accomplished pilot. He's almost as good as I am. Thank you, Your Honor. Where did you land your chopper this morning? Unfortunately, I haven't flown in about 20 years, Your Honor. Oh, yeah. Okay. Now, we're going to take a recess. We'll be back. Yeah, we'll be back. All rise. This court now begins the session. Please be seated. Let's go back on the other case for a minute, the Ferguson matter. Is the lawyer for the FAA and Ferguson here? Yeah. Okay. Yeah, we're the only ones here. Yeah. Does the record show that Ferguson was part owner of the helicopter? Yes, Your Honor. Huh? Yeah. Yes, Your Honor. It shows he was a part owner of the helicopter. Okay. And in the record, there's a picture of the helicopter. Yeah. And on the helicopter, it says it's Wine Country Helicopters. He was a partner in Wine Country? I don't believe, based on the record, that he necessarily was a partner in the business enterprise, but he certainly was an investor in the ownership of the helicopter. Okay. So what is he supposed to do when he asks the pilot if this is for compensation? He says no. That's lackey.  Yes, Your Honor. Yeah, he was a pilot. It says no. Well, first off, Mr. Ferguson is a very experienced pilot. He has a commercial certificate and an airline transport pilot certificate. He would have been obligated to, when he saw the arrangement where the helicopters were meeting, there were many helicopters there, a lot more than just Mr. Lackey's helicopter. When they were meeting, they were picking up passengers. They were carrying the passengers to the racetrack. He saw the numbers of the passengers. He didn't recognize them. They weren't like they were family members or friends or anything like them. They were perfect strangers to him. He had an obligation to inquire. And the line of cases – When I say obligation, where does that obligation come from? It comes – I've told you, normally pilots don't talk to passengers. I mean, you know, I've been on some of those private flights, and pilots really don't – But hopefully on the flights that you were on, when they were small flights like that, they were being legitimately operated under Part 135. No one's ever asked me, did you pay? Right. But hopefully when you were on those flights, it was apparent to the pilot what the arrangement was. Here, the pilot, he had no idea other than what Lackey told him, and he didn't inquire at all at that point. Well, who was he supposed to inquire? He should have asked the passengers. And, in fact, if you look at the case law that's cited in the brief, I think it's the CROI case in particular, it's almost directly on point. And because of the additional safety burdens that are imposed under Part 135 to ensure the safety of the passengers, the obligation falls on the pilot, not necessarily on the operator, although certainly the operator can be held responsible, too, for the illegal flights. Right. So what I'm wondering is how come Ferguson individually – actually, there's a statement in the ALJ decision that he was a – that the Wine Country Helicopters was his corporation, but in other places it just says that Ferguson owned part of the helicopter. That wasn't his corporation. I believe that's correct, based on the record, that he was an investor in the helicopter itself, although when he invested in the helicopter, the helicopter says on the outside of it – I think it's Exhibit C3, maybe – it shows that very clearly in the pictures, it says Wine Country Helicopters on it. So if, Your Honor, if you could place yourself as somebody who wanted to go to the race on that day and you were told, oh, sure, pay your money to Henry Aviation and show up at this spot and we'll transport you by helicopter to the race, your expectation as a passenger would have been that the flights were being operated by a pilot who was qualified to conduct the flights, because that was the arrangement that was made between Henry Aviation and Mr. Lackey. So when the passengers showed up and Mr. Ferguson, an experienced pilot and everything, was in a position to see what was going on, that he wasn't transporting people who were friends of his or something that would fall under one of the exceptions to Part 135. Friends of Mr. Lackey's. Pardon me? Or friends of Mr. Lackey's. Well, for that matter, friends of Mr. Lackey's. Would that have been all right if they were friends of Mr. Lackey's? Well, I think the exception to the rule is that the flight has to be for a common purpose. And so, first off, Mr. Ferguson knew the flight wasn't for a common purpose. It was like – I don't know what a common purpose is. Well, common purpose would be if Mr. Ferguson was going to operate that helicopter that day and he was going to go to the race. So he needed to operate the helicopter to transport himself to the race. And he had a couple of friends who said, oh, you're going to the race, can we come along? And he said, sure, but you have to pay your share of it. That's what a common purpose would be. But here, that wasn't what Mr. Ferguson was doing at all. He would have to say you have to pay your share of it. Yes, it had to be apparent that they were paying their share and that they were going the same place that the pilot of the helicopter was going for purposes of his own transportation to get there. It would be incidental to it at that point. But here, that wasn't the arrangement at all. He was taking the passengers to the raceway, and then he was operating back to pick up more passengers. Right there, that was enough to clue him in that the arrangement was most likely a comp and hire arrangement. And he should have inquired further at that point. And I think when you look at the board's decision. Would they think that they paid? And he's flying them over there? Well, I think that would be a natural assumption. If he was picking them up at a place where other passengers were also being picked up, ferried to the racetrack, and then he's operating the helicopter back to the location to pick up more passengers to transport them there as well. I mean, he didn't have any intention to go to the race at all. He was only there to transport the passengers. The other thing is. Well, wouldn't they have paid? Normally have paid some third party? Pardon me? Is the pilot like a bus driver? He has to see the money go into the? No, absolutely not. It was a charter arrangement. And so, in fact, as I mentioned earlier during the argument, is he didn't really necessarily even have to have any money change hands. Here, though, there's plenty of documentary evidence that money did change hands. When they come on, he's supposed to say, have you paid? Well. Or. He should have inquired about the nature of the arrangement at that point. He did. He inquired of Mr. Lackey. Mr. Lackey told him it wasn't a commercial flight. So he did inquire of the person who should know. But the obligation. At the moment, who's he supposed to inquire of? The obligation is his. He should have asked the passengers what arrangements were made for the flights. So he had an obligation. He can't take Mr. Lackey's word. Right. Because otherwise, Your Honor, you risk having a situation where you could have been transported on a similar flight with somebody who wasn't qualified. Well, I know I have been. I hope you haven't. I really hope you haven't. But that's why the obligation falls on the pilot. It's not like he can just turn his back to the circumstances in which he's operating. It's the higher burden that's imposed under Part 135 as opposed to a Part 91 arrangement, which is more what you would see in general aviation. But the pilot clearly has the obligation to inquire. Okay. Thank you. Okay. Thank you. Okay. All right. So next. Next. Cases. Could I just very briefly clarify something? Oh, yeah. Please. Please. Thank you. In the opening brief of Petitioner John Wayne Ferguson, there was one section entitled, Facts Relevant to the Issues Submitted for Review. Just let me read five of them for you. Number 20 on page 6. Mr. Henry was not charged for any flights flown by John Ferguson on June 26, 2005. Number 21. Wine Country Helicopters did not receive payment for any flights flown by Mr. Ferguson on June 26, 2005. 22. Mr. Ferguson did not collect any money from the passengers he transported. Number 23. Mr. Ferguson was not paid for any flights that he flew on June 26, 2005. Number 24. Try to speak a little slower. I'm sorry? Try to speak a little slower. I apologize, Your Honor. Go ahead. I get excited sometimes. Number 24. The flights flown by Mr. Ferguson were non-revenue flights.  All right.
judges: Pregerson, Reinhardt, Wardlaw